OPINION
On September 8, 1999, appellee, the Stark County Department of Human Services, filed a complaint for the permanent custody of Raymond Peterson, Jr. born June 25, 1999, alleging the child to be dependent. Mother of the child is appellant, Kathy Lewis Peterson, and father is Raymond Peterson. This child is appellant's seventh child. An adjudicatory and dispositional hearing was held on November 23, 1999. On December 14, 1999, appellee filed proposed findings of fact and conclusions of law. By judgment entry filed same date, the trial court adopted and incorporated said findings and conclusions, finding the child to be dependent and awarding permanent custody of the child to appellee. The trial court filed a nunc pro tunc judgment entry on December 20, 1999 to correct names. Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I THE TRIAL COURT ERRED IN FINDING THAT THE CHILD COULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH APPELLANT AND THAT A GRANT OF CUSTODY TO THE DEPARTMENT OF HUMAN SERVICES IS IN THE CHILD'S BEST INTEREST.
 I
Appellant claims the trial court's determination that found the child could not be placed with her within a reasonable time or should not be placed with her and the award of permanent custody to appellee was not in the child's best interests. We disagree. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows: (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
(16) Any other factor the court considers relevant.
R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 or2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
Appellant argues she "has shown a concerted effort to comply with the case plan" and "has not continuously and repeatedly failed [to] remedy her problems." See, Appellant's Brief at 12. Appellant argues she has fulfilled all of the requirements "to the best of her ability." Id. Appellee first became involved with appellant and her children in 1994 due to concerns of poor supervision, inappropriate discipline, inadequate housing, domestic violence, physical abuse, sexual abuse and mental health concerns. Vol. II T. at 53, 61-62; Vol. I T. at 48. We note the child sub judice was never in appellant's home but was taken at birth by appellee pursuant to Juv.R. 6. Dr. Robin Tener, a clinical psychologist, testified she interviewed appellant's five children who stated they pretty much had the run of the house because appellant slept all day. Vol. I T. at 31. The children were often unsupervised. Id. at 35, 38, 46. The children were fearful of Mr. Peterson, described by one child as appellant's "pimp." Id. at 31, 38, 39, 46. The children described physical and sexual abuse in the home by both appellant and Mr. Peterson. Id. at 25, 31-32, 35, 39, 46, 48. The children were diagnosed with various psychological problems and disorders. Id. at 36-37, 40-41, 43-44, 45, 47. Dr. Ann Hickin, a psychologist, evaluated appellant "to determine any psychological, emotional social issues" that would affect her parenting abilities. Id. at 55. Appellant told Dr. Hickin that appellee was operating a "baby stealing ring." Id. at 57. Appellant admitted to domestic abuse at the hands of Mr. Peterson. Id. at 58. Dr. Hickin found appellant demonstrated a "lot of defensiveness and reluctance to admit problems * * * emotional instability, irritability, and ah hostility" with "bizarre thought patterns." Id. at 59. Appellant's intelligence level is in the "extreme lower level." Id. at 60. This leads to "problems simulating new material and then synthesizing." Id. at 61. This in turn leads to problems "when a person tries to problem solve or develop coping skills." Id. Dr. Hickin concluded it would be very difficult for appellant "to function as far as related to parenting, problem solving, coping skills." Id. at 63. Dr. Hickin opined the child sub judice should not be returned to appellant due to her "limited ability to function as a parent." Id. at 63-64. Appellant testified and denied any domestic violence from Mr. Peterson. Vol. II T. at 45, 88-89. Janice Fein, appellee's family service worker assigned to the case, testified since 1994 appellant has told her of several incidents of domestic violence involving Mr. Peterson. Id. at 54-56. In fact, when Ms. Fein received the case in 1994, a "no contact order" was in place with regard to Mr. Peterson and appellant and the children. Id. at 53. Ms. Fein's biggest concern was that appellant was unable to protect herself and the children. Id. at 56. Ms. Fein found appellant uncooperative, obsessive and subject to mood swings. Id. at 57, 58, 61. Appellant refused to have a psychological evaluation done until the very end. Id. at 57. Ms. Fein saw no improvement in appellant's parenting ability despite participating in Goodwill Parenting classes. Id. at 59. Admitted as an exhibit was transcripts of past hearings. See, State's Exhibit 4. Included in the transcripts is the testimony of Susan Tennill, a parenting instructor and appellant's case manager from Goodwill Industries. See, April 15, 1997 Transcript. Ms. Tennill testified appellant participated in the Goodwill Parenting program and did moderately well despite some absences and bouts of paranoia. State's Exhibit 4, April 15, 1997 T. at 9-10. Ms. Tennill testified appellant "demonstrated behaviors consistent with emotional instability and required ah constant encouragement and guidance." Id. at 10. Mr. Peterson was incarcerated in the Stark County Jail until March of 2000 for a DUI charge. Vol. II T. at 26. He has previously been convicted of domestic violence and attempted murder. Id. at 28-29, 32, 38. As to best interests, Ms. Fein testified the children were adoptable and in fact all of the children save for one of the older ones "have been in the homes adoptive placements since they were placed." Id. at 99. The adoptive homes understand the mental and emotional problems the children are experiencing and are still wanting to adopt them. Id. Admittedly, appellant has never had the opportunity to parent the child sub judice. Nevertheless, we find sufficient credible evidence that reasonable efforts and time have been expended and that given the testimony of Dr. Tener and Dr. Hickin, it is unlikely appellant's parenting skills will improve. Based upon our review, we find there was clear and convincing evidence to support the trial court's decision to grant permanent custody of the child to appellee. Assignment of Error I is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
By FARMER, J. GWIN, P.J. and WISE J. concur.